# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **FIDEL LEAL-HERNANDEZ,** | |
| *Petitioner*, | |
| **v.** | **Civil No.: 1:25-cv-02428-JRR** |
| **KRISTI NOEM,** *et al.*, | |
| *Respondents*. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending now before the court is Petitioner Fidel Leal-Hernandez's Amended Petition for Writ of Habeas Corpus (ECF No. 13; the "Petition"), as well as Respondents'[1] Response (ECF No. 16; the "Response"). Following expedited briefing by the parties, the court convened a hearing on the Petition on August 21, 2025.

## I.    Factual and Procedural Background

The record indicates the following: Petitioner is a native and citizen of Mexico who has resided in the United States for more than 20 years. (ECF No. 13 ¶¶ 1, 14.) On July 24, 2025, Respondents (or those acting at their direction and under their authority) arrested Petitioner while he was on his way to work. *Id.* ¶¶ 1, 15. He was taken into custody and held in the hold rooms of the U.S. Immigration and Customs Enforcement Baltimore Field Office. *Id.*[2]

On or about July 28, 2025, Petitioner was served with a Notice to Appear ("NTA") and placed in removal proceedings. *Id.* ¶ 16. The NTA charges Petitioner as follows:

---

[1] Respondents are referred to herein collectively as the "Government."

[2] Petitioner is currently detained at Moshannon Valley Processing Center in Philipsburg, Pennsylvania. (ECF No. 13 ¶ 2.) Petitioner filed his original Petition for Writ of Habeas Corpus on July 24, 2025, while he was detained in Baltimore. (ECF No. 1.) The court thus concludes it has proper jurisdiction over this action.

☐　You are an arriving alien.
☒　You are an alien present in the United States who has not been admitted or paroled.
☐　You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;
2. You are a native of MEXICO and a citizen of MEXICO;
3. You entered the United States at or near unknown place, on or about unknown date;
4. You were not then admitted or paroled after inspection by an Immigration Officer.
5. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; and/or . . .
6. You are an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.

ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION(S) OF LAW:

212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. [8 U.S.C. § 1182(a)(6)(A)(i).]

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act. [8 U.S.C. § 1182(a)(7)(A)(i)(I).]

(NTA, ECF No. 16-1.)

On July 30, 2025, in advance of the scheduled master calendar hearing before an

2

Immigration Judge ("IJ") per his NTA, Petitioner filed a Motion for Bond Redetermination.  (ECF No. 16-2.)  On August 6, 2025, Petitioner appeared at a custody redetermination hearing before IJ Robert Bailey. (ECF No. 13 ¶ 17; ECF No. 16-3; Jaskot Aff., ECF No. 18-1 ¶ 3.)  At the master calendar hearing, Petitioner challenged the Government's assertion (per the NTA) that he is removable under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182 (a)(7)(A)(i)(I), because, he asserted (and asserts still) that he is neither an "arriving alien" nor an "applicant for admission."  On consideration of the parties' presentations, the IJ sustained only the NTA removability charge under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), pertaining to aliens present in the United States without admission or parole.  (ECF No. 18 at p. 4; Jaskot Aff., ECF No. 18-1 ¶ 5.)[3]

At the bond proceeding, the Government argued that Petitioner was an "applicant for admission" under 8 U.S.C. § 1225(b) and, therefore, the IJ lacked jurisdiction to conduct a custody redetermination, because Petitioner was subject to mandatory detention per § 1252(b); the Government additionally argued that, if the IJ concluded he had jurisdiction, Petitioner is a flight risk and should remain in custody.  (ECF No. 13 ¶ 17; Jaskot Aff., ECF No. 18-1 ¶ 4.)  The IJ rejected the Government's arguments and expressly concluded Petitioner was not detained as an "arriving alien" or "applicant for admission" (per § 1225(b)), and that, instead, Petitioner's detention falls under the default detention provision at 8 U.S.C. § 1226(a), thus conferring jurisdiction for custody redetermination.  (ECF No. 13 ¶ 17.)  Upon consideration of the facts presented, the IJ concluded Petitioner was neither an undue flight risk nor a threat to public safety, and ordered Petitioner released from custody under bond of $10,000.00.  (IJ Order, ECF No. 13-1.)

---

[3] At the hearing on the Petition, on inquiry from the court, the Government was unable to articulate any factual basis on which it rests its assertion that Petitioner is removable as an "arriving alien."  The Government explained it was not prepared to address that "tricky" issue.

Thereafter, Petitioner's family attempted to pay the bond, which the Government refused to accept. (Jaskot Aff., ECF No. 18-1 ¶ 7.) Instead, on August 7, 2025, the Government invoked a regulatory automatic stay of the IJ's order pursuant to 8 C.F.R. § 1003.19(i)(2) (ECF No. 13 ¶ 18; ECF No. 16-5), which provides:

> Automatic stay in certain cases. In any case in which [the U.S. Department of Homeland Security ("DHS")] has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR–43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board. The decision whether or not to file Form EOIR–43 is subject to the discretion of the Secretary.

8 C.F.R. § 1003.19(i)(2).

Some background to the automatic stay provision is helpful. Following an iterative process and consideration of criticism that the automatic stay provision (in its interim rule form) would be invoked absent factual foundation or appropriate individualized case review, the Department of Justice ("DOJ") issued its final rule, as quoted above. Speaking to these concerns, 8 C.F.R. § 1003.6(c)(1) provides in relevant part:

> To preserve the automatic stay, the attorney for DHS shall file with the notice of appeal a certification by a senior legal official that—
>
> (i) The official has approved the filing of the notice of appeal according to review procedures established by DHS; and
>
> (ii) The official is satisfied that the contentions justifying the continued detention of the alien have evidentiary support, and the legal arguments are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing precedent or the establishment of new precedent.[4]

---

[4] On October 2, 2006, DOJ published the final rule in the Federal Register (Vol. 71, No. 190) and set forth the following context for changes implemented to the final rule following public comment on the interim rule:

Petitioner alleges the Government did not make any individualized determination as to whether to invoke the automatic stay provision in his case as articulated by § 1003.6(c)(1). (ECF No. 13 ¶ 20.) The Government's Response fails to address this issue and thus concedes the point. *Stenlund v. Marriott Int'l, Inc.*, 172 F.Supp.3d 874, 887 (D. Md. 2016) (noting that a party "concedes the point" when it fails to respond to an argument). At the hearing on the Petition, on inquiry from the court regarding whether the § 1003.6(c)(1) individualized review "was done here," the Government obliquely averred that there are no facts in the record (presumably to have been offered by Petitioner) that the mandatory review per "procedures established by DHS" was not completed, and added that because the regulation requires the certification, "it would have been done."[5]

---

First, in order to allay possible concerns that in some case the automatic stay might be invoked by low-level employees of DHS without supervisory review, or might be invoked without an adequate factual or legal basis, this rule makes two changes in the process for invoking the automatic stay. The final rule provides that the decision to file the Form EOIR–43 (which must be done within one business day of the immigration judge's custody decision) will be subject to the discretion of the Secretary. Under the provisions of the automatic stay rule which are not changed by this final rule, the automatic stay will lapse 10 business days after the issuance of the immigration judge's decision unless DHS files within that time a notice of appeal with the Board presenting DHS's arguments for reversal or modification of the immigration judge's custody decision. This rule adds a new requirement that, in order to preserve the automatic stay, a senior legal official of DHS must certify that the official has approved the filing of the notice of appeal to the Board and that there is factual and legal support justifying the continued detention of the alien.

.    .    .

Past experience shows that DHS has invoked the automatic stay in only a select number of custody cases. For example, the EOIR statistics indicate that, in FY 2004, the immigration judges conducted some 33,000 custody hearings and the Board adjudicated 1,373 custody appeals. Yet, DHS sought an automatic stay only with respect to 273 aliens in FY 2004—and only 43 aliens in FY 2005.

71 Fed. Reg. 57874, 57878 (Oct. 2, 2006).

[5] Counsel explained: "In this case, I believe – I don't know if we have any facts showing that [the review] wasn't [done], it's my understanding that it would have been done. That it's required that they do have some certification that goes – in order to perfect their appeal to the board."

To be clear, nothing in the record before the court suggests or hints that any review of Petitioner's case in accordance with DHS policy was undertaken prior to invocation of the automatic stay, and nothing in the court's record sets forth any written certification described at § 1003.6(c)(1), or any affidavit to that effect. The court observes that the Form EOIR-43, Notice of [Immigration and Customs Enforcement ("ICE"] Intent to Appeal Custody Redetermination (the "Notice of Intent to Appeal"), provided by the Government at ECF No. 16-5, indicates in the lower left corner that it is page "1 of 1." The Notice of Intent to Appeal offered by the Government for the court's consideration lacks the certification required by 8 C.F.R. § 1003.6(c)(1).

To make sense of all this, Petitioner draws the court's attention to a Government memorandum issued on July 8, 2025, to all ICE employees, titled "Interim Guidance Regarding Detention Authority for Applications for Admission." In the memo, the Government provides in relevant part:

> **Effective immediately, it is the position of DHS that [applicants for admission under section 235(a)(1) of the Immigration and Nationality Act] are subject to detention under INA § 212(b) and may not be released from ICE custody except by INA § 212(d)(4) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are not treated in the same manner that "arriving aliens" have historically been treated.

(ICE Interim Guidance, ECF No. 18-2) (emphasis in original). Petitioner urges that this blanket policy that Petitioner (and those similarly situated) shall be treated as a mandatory detainee "ineligibl[e] for a custody redetermination hearing" is precisely why the Government argued at the bond hearing that Petitioner was either an "arriving alien" or an "applicant for admission" subject to mandatory detention under § 1225(b); and that once the IJ issued the bond order, the Government filed an appeal effectuating an automatic stay of the IJ's order, because – per its

"effective immediately" policy announced mere days before he was arrested – the Government takes the position that Petitioner "may not be released for the duration of [his] removal proceedings."

In sum, Petitioner contends that the Government has contorted the automatic stay from its many years' long (and intended) use as the exception to the rule such that it is now the rule – to be applied reflexively in every circumstance in which DHS disagrees with an IJ on custody.  In this manner, Petitioner asserts the Government has conscripted the automatic stay to its unlawful end – to overrule an IJ with no opportunity to be heard, no individualized case assessment, no publication of what, if any, facts or evidence the Government relies upon for its appeal; and, by so doing, has created by fiat a "new class of mandatory detainees that is not enumerated in the INA." (ECF No. 18 at p. 4.)

In his operative Petition, Petitioner asserts that the Government's invocation of the automatic stay provision in 8 C.F.R. § 1003.19(i)(2) effectively to overrule the IJ's order violates his Fifth Amendment rights to substantive and procedural due process (Counts One and Two, respectively), and is *ultra vires,* as it exceeds ICE's authority under the Immigration and Nationality Act ("INA") (Count Three).[6]  (ECF No. 13 ¶¶ 34–57.)

Petitioner does not challenge his arrest or removal proceedings (commencement or procedure of adjudication); Petitioner expressly limits his request for habeas relief to his continued custody contrary to the ruling of the IJ.  (ECF No. 18 at pp. 1, 8–9, 11, 12.)  And no order of removal has been issued, as confirmed by the Government in its papers (ECF No. 16 at p. 7) and at the hearing.

---

[6] Petitioner's reply in support of the Petition specifies that he challenges the constitutionality of 8 C.F.R. § 1003.19(i)(2) "as applied to Mr. Leal-Hernandez."  (ECF No. 18 at p. 4.)  Counsel for Petitioner confirmed at the hearing that he presents an "as applied," not a facial, challenge to the automatic stay provision.

The Government opposes the Petition.  In its brief, the Government raises several statutory jurisdictional challenges and (somewhat alternatively) argues that the court should exercise its discretion to require Petitioner to exhaust (non-mandatory) administrative remedies. Further, although not set forth in its papers, at the hearing the Government suggested that should the court be inclined to grant the Petition, the court could consider building in a stay to provide the Government an opportunity to pursue an emergency stay from the Board of Immigration Appeals ("BIA") per 8 C.F.R. § 1003.19(i)(1).

## II.    Analysis

Pursuant to 28 U.S.C. § 2241(a), a district court may grant a writ of habeas corpus within its jurisdiction.  Petitioner asks this court to grant his Petition, declare that the Government's invocation of the automatic stay as against him violates the INA and the Due Process Clause of the Fifth Amendment, and lift the automatic stay of his bond, so he may be released from ICE custody.  (ECF No. 13 at p. 14.)

The Government urges the court to dismiss the Petition.[7]  It contends the court lacks jurisdiction to consider his challenge pursuant to 8 U.S.C. §§ 1252(g), (b)(9) and 1226(e).  (ECF No. 16 at pp. 10–17.)  And, should the court conclude it has jurisdiction to consider the Petition, the Government argues the court should dismiss the Petition because Petitioner failed to exhaust his administrative remedies.  The Government further opposes the Petition on its merits, arguing that Petitioner's detention is constitutional and that the Government's use of the automatic stay in Petitioner's case is not an *ultra vires* exercise of authority.  *Id.* at pp. 17–29.

### A.  Jurisdictional Challenges

The court turns first to the Government's asserted jurisdictional challenges under 8 U.S.C.

---

[7] The Government's papers request an order "denying and dismissing the Petition."  (ECF No. 16 at p. 32.)

§ 1252(g), 8 U.S.C. § 1252(b)(9), and 8 U.S.C. § 1226(e).  For the reasons that follow, the court disagrees with the Government, and finds that none of the statutory provisions on which the Government relies applies to this action or otherwise bars this court's jurisdiction to consider and rule on the Petition.

### 1.  8 U.S.C. § 1252(g)

8 U.S.C. § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

According to the Supreme Court, § 1252(g)'s jurisdictional bar "applies only to three discrete actions" identified in the section: commencement of removal proceedings, adjudication of removal cases, and execution of removal orders.  *Reno v. American-Arab Anti-Discrimination Comm*., 525 U.S. 471, 482 (1999).  *Reno* further makes clear that it is "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."  *Id.*  As set forth above, Petitioner challenges none of these events; that is plain as day.  The Petition mounts a challenge solely to his continued custody.  None of the cases the Government relies on pertain to cases in which a petitioner, like Mr. Leal-Hernandez here, pursued judicial review of his allegedly unconstitutional custody.  In accordance with Supreme Court precedent and the plain language of the text, § 1252(g) does not bar this court's authority consider this action.

9

### 2. *8 U.S.C. § 1252(b)(9)*

8 U.S.C. § 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

Here, again, the Government advocates for misapplication of the statute. Section 1252(b)(9) requires review of removal orders to be undertaken by the Court of Appeals. *See also id.* § 1252(a)(5) (providing that review by the Court of Appeals is the "exclusive means for judicial review of an order of removal . . . .") The Government erroneously expands the wingspan of § 1252(a)(5), arguing that the section "provides that a petition for review is the exclusive means for judicial review of immigration proceedings." (ECF No. 16 at p. 16.) It does not. As Petitioner correctly points out, "[c]ustody determinations and removal orders are distinct processes, each with separate mechanisms for judicial review." (ECF No. 18 at p. 11 n.3.) "Immigration proceedings" is not an apt substitute for "removal orders." There is no removal order in place (as the Government confirmed at the hearing). Further, the plain language of the section has nothing to do with the Petition or the requested relief.

None of the cases on which the Government relies bears remote relevant relation to this habeas action – not the facts, not the procedural posture, and not the relief requested.[8] In an effort

---

[8] Of worthy note is the Government's misconstruction of *Jennings v. Rodrigues*, 583 U.S. 281 (2018). Quoting the concurring opinion of Justice Thomas, the Government argues: "The fact that Leal-Hernandez is challenging the basis upon which he is detained is enough to trigger § 1252(b)(9) because 'detention is an 'action taken . . . to remove' an

to shoehorn the Petition into the jurisdictional bar created by § 1252(b)(9), the Government urges that the court should construe the Petition to be something it is not.

> Though Leal Hernanez frames his challenge as relating to DHS's invocation of the automatic stay, rather than a challenge to DHS's decision to detain him in the first instance under 8 U.S.C. § 1225 (a provision which precludes his release on bond by the immigration judge), such creative framing does not evade the preclusive effect of § 1252(b)(9).

(ECF No. 16 at pp. 18–19.)

The Government ignores the elephant in the room. Following argument by Petitioner and the Government at the August 6 custody redetermination hearing, IJ Bailey rejected the Government's argument that Petitioner was arrested under § 1225 – and agreed with Petitioner that § 1226 is the applicable provision regarding his detention (thus conferring authority to redetermine custody). It strains credulity to suggest Petitioner seeks relief here from a DHS decision Petitioner already freed himself of through the IJ.

Section 1252(b)(9) does not bar this court's authority consider this action.

---

alien.'" (ECF No. 16 at p. 19, quoting *Jennings*, 583 U.S. at 319 (Thomas, J., concurring).) Just last week, Judge Murphy of the District of Massachusetts succinctly set forth the view of this court:

> To start, Justice Thomas's opinion is not a "concurring" opinion, *id.*, but rather a concurrence *in part* and a concurrence in the judgment. *Jennings*, 583 U.S. at 314. This is more than a schoolmarmish technicality because the section of the opinion quoted by Respondents explicitly *contradicts* the plurality's (and dissent's) jurisdictional holding, as Justice Thomas himself recognized: 'The plurality asserts that § 1252(b)(9) covers respondents' claims only if the words "arising from" are given an "expansive interpretation." *Ante*, at 840. ***I am of a different view.*** Even if "arising from" is read narrowly, § 1252(b)(9) still covers the claims at issue in this case. That is because detention *is* an "action taken ... to remove" an alien. *Id.* at 318 (Thomas, J., concurring in part and concurring in the judgment) (first emphasis added, second emphasis in original). Respondents' reliance on a functionally dissenting opinion that contradicts the holding of the Court is obviously improper.

*Romero v. Hyde,* 25-11631-BEM, 2025 WL 2403827, at *5 (D. Mass. Aug. 19, 2025).

### 3.  8 U.S.C. § 1226(e)

8 U.S.C. § 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e).

The Government argues: "The Court also lacks jurisdiction to review the decision of the Government under 8 U.S.C. § 1226(b) to revoke bond granted by the immigration judge under 8 U.S.C. § 1226(a)."  The Government turns this section on its head.  The Attorney General neither revoked nor denied bond.  Rather, the Attorney General's appointee – IJ Bailey – granted bond.  *See* 8 U.S.C. § 1001.1(l) (defining "immigration judge" as "an attorney whom the Attorney General appoints as an administrative judge within the Executive Office for Immigration Review, qualified to conduct specified classes of proceedings . . . .").  The plain language of this section does not mean what the Government says it means.

Nonetheless, the Government urges: "Here, as Leal-Hernandez seeks review of the Government's decision to revoke parole under 8 U.S.C. § 1226(b), the Court should find that review of that discretionary determination is barred under 8 U.S.C. § 1226(e)."  The Government is playing revisionist historian.  Petitioner was never paroled.  So parole was never revoked.  As Petitioner correctly reflects: "He was arrested by DHS, and has been held in custody ever since, and an immigration judge ordered his release under . . . 8 U.S.C. § 1226(a)(2)(A)."  (ECF No. 18 at p. 13.)

Further, the Government's reliance on *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022), is misplaced, because that case dealt with a direct challenge to an IJ's bond determination.

Obviously, Petitioner wants the IJ's bond determination honored; he challenges the constitutionality of the Government's invocation of the automatic stay pending appeal to the BIA to block compliance with the order.[9]  The court is instead further persuaded of its jurisdiction by *Demore v. Kim*, 538 U.S. 510 (2003), where the Supreme Court "affirmed that § 1226(e) does not apply to suits challenging the framework for decisions rather than a discretionary decision itself made under 8 U.S.C. § 1226."  (ECF No. 18 at p. 13; citing *Demore*, 538 U.S. at 516–17.) Petitioner here does not challenge any discretionary decision made under § 1226.  Again, what he challenges is the Government's use of its regulatory framework (8 C.F.R. § 1003.19(i)(2)) that, Petitioner contends, "allows DHS to functionally amend the INA to create a new class of individuals subject to mandatory detention by invoking the automatic stay provision in each and every case where the immigration judge disagrees with DHS's interpretation of § 1225—an interpretation that deviates from decades of prior practice, established case law, and the plain text of the INA." (ECF No. 18 at p. 3.)  Additionally, *Demore* affirmed that "where Congress intends to preclude judicial review of constitution claims" or "to bar habeas review," the "Court has required a particularly clear statement that such is Congress' intent."  *Id.* at 517.  To the court's knowledge, neither the INA nor the Code of Federal Regulations contains such a statement.

Section 1226(e) does not bar this court's authority to consider this action.

### B.  Mandatory Detention under 8 U.S.C. § 1225(b) or Discretionary Detention under 8 U.S.C. § 1226(a)

Having determined that this court has jurisdiction over the Petition, and specifically the causes set forth therein and Petitioner's requested relief, the court turns now to the Government's assertion that Petitioner's detention is mandatory pursuant to 8 U.S.C. § 1225(b)(2).  To be clear,

---

[9] If applicable to this case for any purpose, one could plausibly assert *Miranda* places the Government's position in its cross-hairs – not the other way around.

the Government does not actually argue that the court should find Petitioner subject to §
1225(b)(2); rather the Government presents Petitioner's § 1225(b) status as an established fact in
the "Background" section of the Government's Response, as follows:

> **Leal-Hernandez Is Detained Pursuant to 8 U.S.C. § 1225(b) and**
> **in Removal Proceedings Under 8 U.S.C. § 1229a**
>
> As Leal-Hernandez was found removable under INA §
> 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in
> the United States without admission or parole, and under INA §
> 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182 (a)(7)(A)(i)(I), as an alien who,
> at the time of application for admission, is not in possession of valid
> documentation, he is subject to mandatory detention under 8 U.S.C.
> § 1225(b)(2) and has been placed in full removal proceedings under
> 8 U.S.C. § 1229a. . . .  Leal-Hernandez's release from detention
> under 8 U.S.C. § 1225(b)(2)(A) is subject to the discretion of the
> Government.

(ECF No. 16 at pp. 11–12.)

In its Response to the Petition, the Government fails to mention that while its position (per
the NTA) is that Petitioner is subject to § 1225(b), the IJ rejected that contention and found that §
1226(a) applies to his detention – not § 1225(b).  Instead, in its papers before this court, the
Government presents as a foregone conclusion that Petitioner is detained and held in custody per
§ 1225(b), despite express holding to the contrary by the immigration court (a fact that came to
this court's attention only upon the light shed by Petitioner's Reply).  Having committed to this
tact, the Government offers no argument (in the classical sense) that the Petition should be
dismissed because Petitioner's detention is mandatory pursuant to 8 U.S.C. § 1225(b)(2).
Nonetheless, the court undertakes the analysis here.

Section 1225(b)(2), which applies to "an applicant for admission," provides:

> Subject to [set forth exceptions], in the case of an alien who is an
> applicant for admission, if the examining immigration officer
> determines that an alien seeking admission is not clearly and beyond
> a doubt entitled to be admitted, the alien shall be detained for a

14

proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2).

As set forth above, at the master calendar hearing, Petitioner challenged the Government's assertion (per the NTA) that he is removable under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182 (a)(7)(A)(i)(I), because, he asserted (and asserts still) that he is neither an "arriving alien" nor an "applicant for admission."  On consideration of the parties' presentations, the IJ sustained only the NTA removability charge under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), pertaining to aliens present in the United States without admission or parole.  (ECF No. 18 at p. 4; Jaskot Aff., ECF No. 18-1 ¶ 6.)  Even had the IJ not resolved this issue in favor of Petitioner's argument that § 1225(b) does not apply to his circumstance, if called upon to make the determination (and to the extent it is relevant to the court's analysis here), it is plain that § 1225(b) does not apply to Petitioner.

As Petitioner correctly explains:

> Since at least 1996, the INA has mandated the detention of arriving aliens and certain criminal non-citizens detained in the United States. The Board of Immigration Appeals has long held to this interpretation. For everyone else, 8 U.S.C. § 1226(a) provides DHS the discretion to detain noncitizens, subject to review during a custody hearing before an immigration judge. This legal conclusion was affirmed [on June 30, 2025], when the Attorney General designated as Board precedent *Matter of Akhmedov,* 29 I. & N. Dec. 166, 166 (BIA June 30, 2025). In that case, the Board concluded, as the immigration judge did for Mr. Leal-Hernandez, that a noncitizen arrested in the interior of the United States and placed into removal proceedings under 8 U.S.C. § 1229a is detained under 8 U.S.C. § 1226(a) and eligible for release on bond. *Matter of Akhmedov*, 29 I. & N. Dec. at 168. Respondents fail to acknowledge this recent immigration precedent.

The Government, having omitted to mention the holding of *Akhmedov,* and wholly ignoring § 1226(a), cites to *Jennings* to urge that § 1225(b)(2) is a "catchall" for those not covered

by § 1225(a)(1) (which pertains to the treatment of unadmitted or arriving aliens as applicants for admission); § 1225(b)(2) pertains to detention of non-asylum seeking applicants for admission "not clearly and beyond a doubt entitled to be admitted." (ECF No. 16. at p. 8; citing *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).) In further support of its contention that § 1225(b)(2) requires Petitioner's mandatory detention, the Government points the court to 8 C.F.R. § 253.3(c)(1), which provides that an "arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings . . . shall be detained," as well as *Matter of Q. Li*, 29 I. & N. Dec. 66, 69 (BIA 2025), which provides that "an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under section 235(b) of the INA, 8 U.S.C. § 1225(b), and is ineligible for any subsequent release on bond under section 236(a) of the INA."

The Government's position is unavailing. The term "arriving alien" is defined at 8 C.F.R. § 1001.1(q) as follows:

> The term **arriving alien** means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport.

8 C.F.R. § 1001.1(q) (emphasis in original). Petitioner had been present in the United States for more than 20 years at the time of his arrest, a fact which the Government does not contest. Indeed, the Government tacitly (if not explicitly) concedes he is not an "arriving alien" in the very document that charges him as removable:

> ☐ You are an arriving alien.
> ☒ You are an alien present in the United States who has not been admitted or paroled.

16

☐    You have been admitted to the United States, but are removable for the reasons stated below.

(ECF No. 16-1.)  Further, *Matter of Q. Li* is unhelpful to the Government's case, because that case is about detention of an "applicant for admission who is arrested . . . while arriving in the United States."  29 I. & N. Dec. at 69.  As set forth at 8 U.S.C. § 1101(a)(4), "[t]he term 'application for admission' has reference to the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa."  Therefore, Petitioner was neither an applicant for admission nor an arriving alien at the time of his arrest.  Section 1225(b) does not apply to Petitioner's detention circumstance.

The Government appears willfully blind to the operation of 8 U.S.C. § 1226(a), which provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  Inasmuch as Petitioner was arrested on his way to work after more than 20 years in the country, § 1226(a) clearly entitled the Government to seize him as it did, and as expressly asserted by the NTA charge that Petitioner is "an alien present in the United States who has not been admitted or paroled." (ECF No. 16-1.)

Rather than explain why, if at all, the IJ was wrong to determine that § 1226(a)'s discretionary detention applies to Petitioner, the Government merely recites the content of § 1226(a) and (b) – offering quite literally no persuasive argument whatsoever.  (ECF No. 16 at p. 9.)  To the extent the Government suggests by implication that it is entitled to continue to hold Petitioner in custody by operation of § 1226(b), that is obviously wrong.  Section 1226(b) pertains to revocation of parole or bond; as set forth above, Petitioner was never paroled, and no bond has been revoked.  Rather, the Government has appealed the IJ's bond order to the BIA (thus automatically staying the order).  And, importantly, application of § 1226(b) expressly applies

only where parole or bond has been granted as provided in § 1226(a).  Section 1226(b) provides: "The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien."  The Government cannot at once claim entitlement to block operation of the bond order in the first instance and contend that the bond subject to the automatic stay has been revoked.  Bond never issued is not subject to revocation.

For all of these reasons, if called upon to make a determination as to the applicability of 8 U.S.C. § 1226(a) (and to the extent it is relevant to the court's analysis here), the court agrees with the IJ and finds that Petitioner is subject to § 1226(a).

### C. Administrative Remedies

Before proceeding to examine Petitioner's due process and *ultra vires* claims, the court addresses the Government's argument that the court should deny the Petition because he has "failed to exhaust his administrative remedies."  (ECF No. 16 at pp. 20-22.)  The Government urges that Petitioner should be required to pursue an administrative appeal to the BIA (per 8 C.F.R. § 1236.1(d)(3)) and, should he lose there, to seek appellate review before the Court of Appeals per 8 U.S.C. § 1252(a)(5).[10]

Section 1252(a)(5) is not an available avenue of relief here; at least not yet.  That section pertains to appeals of final orders of removal for review by the Court of Appeals.  So, that has no application here.  Petitioner mounts no challenge to a removal order; none has been issued. Further, for the reasons set forth below, the court declines to deny the Petition based on Petitioner's access to BIA review should his bond order be revoked or to seek review of the automatic stay.

To begin, because Petitioner raises serious constitutional claims, administrative exhaustion

---

[10] The Government mistakenly cites 8 U.S.C. § 1105a(a), which would appear to be a clerical error, as that section of the Code pertains to employment authorization of "battered spouses of certain nonimmigrants."

is excused absent a clear expression from Congress – and the INA does not require or mandate exhaustion of administrative remedies. *Miranda v. Garland*, 34 F.4th 338, 351 (4th Cir. 2022) (explaining that "where Congress had not clearly required exhaustion, sound judicial discretion governs") (quoting *McCarthy v. Madigan,* 503. U.S. 140, 144 (1992)); *see Guitard v. U.S. Sec'y of the Navy*, 967 F.2d 737, 741 (2d Cir. 1992) (providing that "[e]xhaustion of administrative remedies may not be required when . . . a plaintiff has raised a 'substantial constitutional question'"); *Aguilar v. Lewis*, 50 F. Supp. 2d 539, 541 (E.D. Va. 1999) (clarifying that "there is no federal statute that imposes an exhaustion requirement on aliens taken into custody pending their removal").

Therefore, the court evaluates the Government's argument according to the court's discretion to require exhaustion of administrative remedies (also referred to as prudential exhaustion). The court declines to exercise that discretion here as requested by the Government, primarily because the BIA has no jurisdiction or authority to rule on the questions Petitioner presents, *i.e.,* the constitutionality of the 8 C.F.R. § 1003.19(i)(2) automatic stay as applied to Petitioner. *Matter of G.K.*, 26 I. & N. Dec. 88, 96-97 (BIA 2013) (explaining that "[n]either the [BIA] nor the Immigration Judges have the authority to rule on the constitutionality of the statutes we administer[.]"); *Coyt v. Holder,* 593 F.3d 902, 905 (9th Cir. 2010) (permitting judicial review of constitutional challenge to regulation because BIA lacks authority over the question).

Further, while the court appreciates that the BIA is empowered to determine whether Petitioner is to be released on bond per the IJ's order (or not), this matter is before the court here and now; and it is common (judicial) knowledge these days that the BIA is presently drinking from a veritable firehose of hundreds of thousands of cases on appeal. And the Government's suggestion (ECF No. 16 at p. 20) that Petitioner could seek expedited BIA review is unpersuasive,

as § 6.4 of the BIA Practice Manual spells out that expedited review requests are "generally not favored" and should be reserved for "compelling circumstances."[11] *BIA Practice Manual*, § 6.4(a). To be sure, Petitioner's circumstances are compelling to Petitioner, but in the world of BIA appeals, they are no doubt commonplace.

As the Supreme Court in *McCarthy* explained:

> [T]his Court has declined to require exhaustion in some circumstances even where administrative and judicial interests would counsel otherwise. In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion. '[A]dministrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further.' Application of this balancing principle is 'intensely practical,' because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure.

*McCarthy v. Madigan,* 503 U.S. 140, 146 (1992) (internal citations omitted). Particularly relevant here, *McCarthy* further explains that where administrative processes may result in undue delay, a court may properly consider that as a factor militating against requiring exhaustion. *Id.* at 146–47. Further, where a court has "some doubt" that the agency can resolve the dispute (including for example the "constitutionality of a statute"), whether because the agency lacks "institutional competence" or "authority," this too may suggest inadequacy of an administrative remedy. *Id.* at 147-48. Finally, *McCarthy* explains, "an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before

---

[11] Section 6.4 describes examples of "compelling circumstances" as follows: "Examples of appropriate reasons to request expedited treatment include: (i) imminent removal from the United States; (ii) imminent ineligibility for relief, such as a minor "aging out" of derivative status; (iii) circumstances threatening to moot the appeal absent prompt action by the Board; and (iv) a health crisis precipitating a need for immediate Board action." *BIA Practice Manual*, § 6.4(a). None of these (or reasonably similar) circumstances is known by the court to exist here.

it." *McCarthy v. Madigan,* 503 U.S. 140, 148 (1992).

On review and consideration of the above-recited precedent as applied to the facts and posture of this action (both here and before the immigration court), the court finds waiver of the requirement to exhaust administrative remedies to be appropriate, and the court will not invoke its discretion to compel Petitioner to pursue them before seeking an audience with the court.

The court now turns to the merits of Petitioner's claims.

### D. Substantive Due Process

In Count One, Petitioner claims that the automatic stay provision at 8 C.F.R. § 1003.19(i)(2) violates his right to substantive due process of law afforded him through the Fifth Amendment to the United States Constitution.

The Fifth Amendment provides in pertinent part: "No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"  U.S. CONST. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001).  This precious right to be free from arbitrary detention extends to noncitizens present in the United States – even those with final orders of removal.  *Id.* at 493 (holding the guarantee of substantive due process "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"); *see Zavala v. Ridge,* 310 F. Supp. 2d 1071, 1076 (N.D. Cal. 2004) (quoting *Zadvydas* for this principle).  "Government detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections or, in certain special and 'narrow' nonpunitive 'circumstances' where a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'"  *Zadvydas*, 533 U.S. at 690 (emphasis in original) (internal citations omitted).

The Government has made no effort to explain what "special justification" exists to deny Petitioner the liberty the IJ ordered subject to bond.  It has brought no compelling governmental interest to the fore.  To the extent the Government takes the position that its interest is to secure Petitioner's presence at proceedings, that interest has been honored and accounted for by a neutral fact-finder and arbiter – the Attorney General's appointee, IJ Bailey, who imposed a $10,000 bond on Petitioner's release.  The Government does not contend Petitioner poses a threat to public safety; and does not contest he has "no relevant criminal record."  (ECF No. 18 at p. 18.)

The Government's discretion in matters of immigration is deep and wide, but surely its chop does not overcome the banks of due process enshrined in the Constitution.  Yet that is precisely what the Government attempts here.  Invocation of the automatic stay per 8 C.F.R. § 1003.19(i)(2) renders the IJ's custody redetermination order an "empty gesture" absent demonstration of a compelling interest or special circumstance left unanswered by IJ Bailey.  As such, the automatic stay results in Petitioner's arbitrary detention violative of Petitioner's substantive due process rights guaranteed by the Fifth Amendment.  *Ashley v. Ridge,* 288 F. Supp. 2d 662, 669 (D.N.J. 2003) (holding that "in effect, the automatic stay provision renders the Immigration Judge's bail determination an empty gesture"); *Mohammad H. v. Trump*, Civil Case No. 25-cv-1576, 2025 WL 1692739, at *5 (D. Minn. June 17, 2025) (finding government violated due process rights of petitioner by invoking automatic stay per 8 C.F.R. § 1003.19(i)(2) after IJ granted bond, because continued detention is "rooted in improper purposes and lacks an individualized legal justification"); *Jacinto v. Trump,* Civil Case No. 25-cv-3161, 2025 WL 2402271 (D. Neb. Aug. 19, 2025) (finding government violated substantive and procedural due process rights of petitioner, and engaged in *ultra vires* conduct, by invoking automatic stay per 8 C.F.R. § 1003.19(i)(2) after IJ granted bond).

22

### E.  Procedural Due Process

The court likewise concludes the automatic stay as applied to Petitioner violates his Fifth Amendment right to procedural due process.  In 1976, in *Mathews v. Eldridge,* the Court set forth the now well-worn factors to consider in determining if government action deprives an individual's Fifth Amendment right to procedural due process or whether the government process is constitutionally adequate.  424 U.S. 319 (1976).  The *Mathews* factors apply here to determine if Petitioner's procedural due process rights as a civil detainee have been violated by the Government's continued custodial detention by operation of the automatic stay.   The *Mathews* factors are as follows:

> First, the private interest that will be affected by the official action;
>
> [S]econd, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and
>
> [Third], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.  In the instant action, all three *Mathews* factors resoundingly fall in favor of Petitioner's claim.

First, as to the private interest factor, there can be no question that Petitioner has perhaps the most acute private interest known to personkind short of life itself: bodily freedom.  Indeed, it is the "most elemental of liberty interests."  *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004); *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

With respect to the second factor (which really breaks down into two), here the risk of erroneous deprivation of Petitioner's liberty is stark.  The automatic stay is a violent distortion of

proper, legitimate process whereby the Government, as though by talisman, renders itself at once prosecutor and adjudicator.  *See Mohommad H., supra,* 2025 WL 1692739, at *5 ("Simply by fiat—without introducing any proof and without immediate judicial review—the Government effectively overruled the bond decision and kept Petitioner detained. In doing so, the automatic stay rendered Petitioner's continued detention arbitrary and gave him no chance to contest the Government's case for detention.")  Or, as Petitioner's counsel aptly put it at the hearing, the automatic stay declares: "Heads, I win.  Tails, you lose."

Moreover, the automatic stay rejects the very core of due process and U.S. detention jurisprudence cornerstones; which is to say – unhappy with the IJ's bond order, the Government invoked the stay – without the "written certification" required by 8 C.F.R. § 1003.6(c)(1), thus freeing itself from undertaking any individualized review of Petitioner's case or offering any factual or evidentiary basis whatsoever to justify (even if unconvincingly) that Petitioner's continued detention is necessary to further a compelling government interest.[12]

As to the existence and value of any substitute procedure available to avoid or cure the grave risk of erroneous deprivation of Petitioner's liberty interest posed by the automatic stay – the Code of Federal Regulations expressly provides one: the discretionary stay process at 8 C.F.R. § 1003.19(i)(1) whereby the Government could have requested (on an emergency basis or not) that the BIA stay IJ Bailey's order during pendency of the Government's appeal.  This alternative option would surely have avoided the due process problems presented by the automatic stay at § 1003.19(i)(2), because: (i) the Government would have been obliged to demonstrate to the BIA's satisfaction that a stay was appropriate based on review of Petitioner's individual case; and (ii) the

---

[12] *Compare* 71 Fed. Reg. 57874, 57878 (Oct. 2, 2006) *with* ECF No. 18-2, *supra,* strongly suggesting that, at least since last month, the Government dispensed with its 2006 position that the automatic stay is to be used rarely and only with the senior legal officer review certifying the existence of factual bases following individualized case review.

adjudicator and prosecutor would remain separate.

Turning to the third *Mathews* factor, the court discerns no significant (or any) governmental interest in continuing to hold Petitioner in custody inasmuch as IJ Bailey was satisfied that Petitioner did not pose a flight or public safety risk such that he should not be released on bond. Inasmuch as the Government appears to have undertaken no evaluation of Petitioner's case – or it has maintained its evaluation a secret from Petitioner and the court – before invoking the automatic stay, the court has no earthly idea what governmental interest could be served by Petitioner's continued detention should he satisfy the bond order. As for the potential fiscal and administrative burdens of the discretionary stay option addressed above, the court acknowledges that some modicum of administrative burden would be imposed by a § 1003.19(i)(1) procedure (with no known additional fiscal burdens). Surely, however, such a burden is dwarfed by the spectacular harm to be suffered by a man jailed arbitrarily.

### F. Ultra Vires

In Count Three, Petitioner seeks habeas relief on the basis that the automatic stay set forth at 8 C.F.R. § 1003.19(i)(2) is *ultra vires*, as it exceeds the authority conferred by Congress though the INA by "rewrit[ing] the INA and effectively creat[ing] a new class of noncitizens subject to mandatory detention, depriving them of the right to a bond hearing that Congress expressly provided they should receive"; and because it "'eliminates the discretionary authority of immigration judges to determine whether an individual may be released, thereby exceeding the authority bestowed upon [ICE] by Congress under [8 U.S.C. § 1226(a)].'" (ECF No. 13 ¶¶ 56–57, first citing Pub. L. 104-208, Div. C, § 303(a) (codified at 8 U.S.C. § 1226(c)), then quoting

*Zabadi v. Chertoff,* Civil Case No. 05-01796 WHA, 2005 WL 1514122, at *1 (N.D. Cal. June 17, 2005).)[13]

The court agrees. Where Petitioner's detention is discretionary and subject to bond redetermination pursuant to 8 U.S.C. § 1226(a) and 8 C.F.R. § 1236, respectively, and the IJ has exercised his discretion to issue bond pursuant to his authority as an appointee of the Attorney General, the automatic stay of 8 C.F.R. § 1003.19(i)(2) renders both the discretionary nature of Petitioner's detention and the IJ's authority a nullity. Therefore, the Government's application of 8 C.F.R. § 1003.19(i)(2) to continue to detain Petitioner following IJ Bailey's order that he be "released from custody under bond of $10,000.00" (ECF No. 16-4) is *ultra vires*.

### G. Alternative Relief

As explained above, at the hearing, the Government suggested that, should the court grant the Petition, the court could opt to stay the order to enable the Government to seek a discretionary stay of the IJ's order per 8 C.F.R. § 1003.19(i)(1).

Following the custody redetermination hearing of August 6, 2025, Petitioner has been continuously held in custody despite IJ Bailey's ruling and Petitioner's effort to satisfy the bond to secure his release. In view of the approximately three weeks he has been held in contravention of the Government's authority, the court finds it inappropriate to stay its order so that the Government may seek a discretionary stay through the BIA. The court is uninformed of the expected duration of such a process and finds it unfair to delay further Petitioner's release following this court's ruling. Therefore, the court declines to stay its order as the Government requests.

---

[13] Petitioner also urges that the memo titled "Interim Guidance Regarding Detention Authority for Applications for Admission" (ECF No. 18-2) confirms the Government has acted to override congressional authority.

### III.    Conclusion and Order

For the foregoing reasons, it is this 24th day of August 2025,

**ORDERED** that the Petition shall be, and is hereby, **GRANTED**; and further it is

**ORDERED** that Petitioner shall be released from custody subject to, and in accordance with, the terms and conditions, including bond conditions, imposed by Immigration Judge Bailey on August 6, 2025; and further it is

**ORDERED** that the orders at ECF Nos. 2 and 10 shall be, and are hereby, **VACATED**.


Madam Clerk is directed to **CLOSE THIS CASE**.

/S/

_____
Julie R. Rubin
United States District Judge